# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| Chicago Bridge and Iron Company, N.V., | ) ) ) |
| Plaintiff, | ) 3:18-cv-100 JWS |
| vs. | ) ORDER AND OPINION ) |
| | ) [Re: Motion at Docket 19] |
| Fairbanks Joint Crafts Council, AFL-CIO, *et al.*, | ) ) ) |
| Defendants. | ) |

## I. MOTION PRESENTED

At docket 19 Defendants Fairbanks Joint Crafts Council, AFL-CIO ("FJCC") and the International Brotherhood of Electrical Workers, Local #1547 ("IBEW") jointly move pursuant to Federal Rule of Civil Procedure 12(c) for an order dismissing the complaint of Plaintiff Chicago Bridge and Iron Company, N.V. ("CB&I"). CB&I opposes the motion at docket 20, and FJCC and IBEW jointly reply at docket 21. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

In February 2013, CB&I acquired The Shaw Group, Inc. ("Shaw") whose subsidiary was party to a collective bargaining agreement ("CBA") with FJCC covering the period from October 1, 2012, through September 30, 2014 (the "2012-2014 CBA").[1]

---

[1] Doc. 1 at 3 ¶ 6; Doc. 1-1.

After that contract expired, CB&I entered into a successor CBA with FJCC "and its affiliates," including IBEW (the "2014-2016 CBA").[2] Section 15.04 of the CBAs required first Shaw and then CB&I to make contributions to various multiemployer pension plans, including the Alaska Electrical Pension Fund (the "Fund"), according to Schedule A of each CBA.[3] That section further provided that the "Union warrants and represents that the Employer's liability, with respect to providing retirement benefits, shall be no greater than as provided" in Schedule A.[4]

Although the parties dispute the attendant circumstances,[5] it is undisputed that the Fund determined that CB&I withdrew from the Fund during the 2015 plan year and assessed $678,171 in withdrawal liability against it.[6] CB&I informed IBEW of its intent to seek recovery from the union for any withdrawal liability.[7] According to CB&I, "withdrawal liability represents an increase in the cost of providing the pension benefits that CB&I was required to provide" pursuant to Section 15.04 in violation of the express warranty in that section.[8] CB&I then sent a letter formally demanding that FJCC and IBEW pay CB&I for the withdrawal liability.[9] In response, counsel for IBEW denied that

---

[2] Doc. 1 at 3 ¶ 7; Doc. 1-2. The 2014-2016 CBA refers to FJCC and the various trades, including IBEW, collectively as the "Union." Doc. 1-2 at 3. The relevant provisions in the 2014-2016 CBA are identical to those in the 2012-2014 CBA, but the 2014-2016 CBA lists each section numerically by article number. For example, Article 9, Section 1 of the 2012-2014 CBA appears as Section 9.01 in the 2014-2016 CBA. *Compare* Doc. 1-1 *to* Doc. 1-2. For ease of reference, this opinion uses the heading convention utilized in the 2014-2016 CBA when referring to the relevant sections found in each CBA.

[3] Doc. 1-1 at 15; Doc. 1-2 at 15.

[4] *Id.*

[5] Doc. 19 at 5; Doc. 20 at 3-4.

[6] Doc. 1 at 4 ¶ 12; Doc. 1-3 at 1.

[7] Doc. 1-4.

[8] *Id.* at 1.

[9] Doc. 1-5 at 1-2.

the CBAs required IBEW or FJCC to indemnify or hold harmless CB&I, and further stated that CB&I was required to pursue any such claim under the grievance and arbitration provision of the CBAs.[10] CB&I did not file a grievance or request arbitration prior to filing the instant lawsuit alleging that FJCC and IBEW breached the CBAs.[11] CB&I's complaint also seeks a declaration that FJCC and IBEW are liable to CB&I for the withdrawal liability.[12] FJCC and IBEW now jointly move to dismiss all claims on the ground that CB&I failed to arbitrate and grieve this dispute under the terms of the CBAs.[13] FJCC and IBEW also contend that CB&I's request for declaratory relief attempts to evade or avoid withdrawal liability and is therefore unlawful and against public policy and cannot form the basis of a breach of contract action.[14]

### III. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[15] Because "Rules 12(b)(6) and 12(c) are substantially identical,"[16] a motion for judgment on the pleadings is assessed under the standard applicable to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6).[17] Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving

---

[10]Doc. 1-6.

[11]Doc. 13 at 9; Doc. 1 at 5-6 ¶¶ 17-23.

[12]Doc. 1 at 7-8 ¶¶ 26-31.

[13]Doc. 19 at 6-20.

[14]*Id.* at 20-23.

[15]Fed. R. Civ. P. 12(c).

[16]*Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005).

[17]*See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980).

party."[18]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[19]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[20]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[21]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[23]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[24]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[25]

In ruling on a Rule 12(c) motion, then, a court must "determine whether the facts alleged in the complaint, . . . taken . . . as true, entitle the plaintiff to a legal remedy."[26]  "If the complaint fails to articulate a legally sufficient claim, the complaint should be

---

[18] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[19] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[20] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[22] *Id.*

[23] *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

[24] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[25] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

[26] *Strigliabotti*, 398 F. Supp. 2d at 1097.

dismissed or judgment granted on the pleadings."[27] A Rule 12(c) motion is thus properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law.[28]

## IV. DISCUSSION

### A. Enforceability of Arbitration Clause

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[29] In light of congressional policy that favors arbitration of disputes, however, if parties to a CBA dispute whether a grievance is covered by the CBA's arbitration clause and that clause is ambiguous, a rebuttable presumption in favor of arbitrability applies.[30] Under this presumption courts should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."[31] If the court determines that an asserted dispute is covered by a mandatory arbitration clause, it may dismiss the case.[32]

Courts apply federal common law principles of contract interpretation when construing a CBA.[33] The starting point for the court's analysis is the CBA's express

---

[27]*Id.*

[28]*Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009).

[29]*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

[30]*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014); *see also Int'l All. of Theatrical Stage Emp. & Moving Picture Technicians, Artists, & Allied Crafts of the U.S., Its Trusteed Local 720 Las Vegas, Nev. v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1042 (9th Cir. 2015).

[31]*Warrior*, 363 U.S. at 582–83.

[32]*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004).

[33]*Alday v. Raytheon Co.*, 693 F.3d 772, 782 (9th Cir. 2012).

written terms, considering the CBA as a whole.[34] The relevant provision in this case is Article 9 of the CBAs, entitled "Grievance Procedure and Arbitration."[35] Section 9.01 enumerates the 3-step grievance procedure agreed to by "[t]he parties to this Agreement, in the interest of resolving all disputes, complaints, or grievances in connection with the interpretation or application of the terms of this Agreement."[36] FJCC and IBBEW rely on Section 9.01's reference to "all disputes, complaint, or grievances," coupled with the strong presumption in favor of arbitrating labor disputes, to argue that the grievance procedure is the exclusive remedy for resolving the parties' dispute over the interpretation of Section 15.04.[37]

But the strong presumption in favor of arbitrating labor disputes may be overcome where the plain language of the CBA refers only to employee-initiated grievances.[38] Here, as in *Standard Concrete*, the language of Steps One and Two describe only the unions' and employees' duties in initiating and forwarding a grievance against CB&I ("The employee shall promptly report to the Chief Steward any complaints, disputes, or grievances . . ."); ("The [FJCC] President or his designee shall refer the matter in writing to the Labor Relations Manager or his designee.").[39] Likewise, CB&I's actions are limited to responding to an employee grievance ("[In the event the [FJCC] President or his designee believes the grievance has merit, [he or she] shall promptly attempt to resolve the dispute with the Project Manager or his designee.");

---

[34]*Id.*

[35]Doc.1-1 at 10; Doc. 1-2 at 11.

[36]Doc. 1-1 at 10-11; Doc. 1-2 at 11.

[37]Doc. 19 at 9.

[38]*Standard Concrete Prods. v. Gen. Truck Drivers, Office, Food & Warehouse Union, Local 952*, 353 F.3d 668, 673-75 (9th Cir. 2003).

[39]*See* Doc. 1-1 at 10-11; Doc. 1-2 at 11.

(after the FJCC informs the Labor Relations Manager of the grievance, "[t]he parties will then meet in an effort to settle the grievance").[40]

FJCC and IBEW argue that *Standard Concrete* is nonetheless distinguishable because the CBA in that case lacked a "broad preamble consigning all matters to arbitration" and did not contemplate grievance procedures aside from those specifically enumerated in the employee-initiated process.[41] Specifically, FJCC and IBEW urge that Sections 9.02 through 9.05 provide that a dispute or complaint other than an employee-initiated grievance may be resolved through a grievance procedure outside that described in Section 9.01.[42]

The plain language of these sections, however, reflects that they are appropriate provisions applicable to the three-step employee arbitration process contemplated by Section 9.01. Section 9.02, which allows the parties to "select a mutually acceptable neutral" as an arbitrator, establishes an alternative to Step 3's more complicated method of selecting an arbitrator through the Federal Mediation and Conciliation Service.[43] Likewise, Sections 9.03 through 9.05, which set limits on what the arbitrator may consider, deal with fees and expenses, and allow transcripts, respectively, are entirely consistent with the employee arbitration described in Section 9.01 and do not relate to any other type of dispute.[44]

It is clear from the plain text of the CBAs that the mandatory arbitration provision of Section 9.01 unambiguously applies to employee grievances only. Because CB&I was not required to arbitrate its dispute with FJCC and IBEW, dismissal is not warranted here.

---

[40] *Id.*

[41] Doc. 21 at 3-4.

[42] Doc. 21 at 3-7.

[43] Doc. 1-1 at 11; Doc. 1-2 at 11.

[44] *Id.*

**B.     Alleged Violation of Public Policy**

FJCC and IBEW additionally contend that CB&I's claims should be dismissed as futile because the unions could not contractually assume the employer's withdrawal liability.[45] The Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, ("MPPAA"), created the concept of withdrawal liability to prevent employers from withdrawing from a multiemployer pension plan without paying their share of unfunded, vested benefits, which could threaten the solvency of such plans. Under the MPAA, a multiemployer pension plan determines whether an employer has withdrawn from the fund, and, if withdrawal has occurred, assesses the employer's share of the unfunded, vested benefits as withdrawal liability.[46] FJCC and IBEW argue that interpreting Section 15.04 as an indemnification agreement or express warranty would contravene the MPAA by allowing CB&I to evade its withdrawal liability obligations.[47] The unions therefore argue that such interpretation would be unlawful and contrary to public policy, and thus cannot form the basis of a breach of contract claim.[48]

Courts may not enforce contractual provisions that violate public policy.[49] The question of public policy is ultimately one for resolution by the courts.[50] The public policy must be "well defined and dominant, and is to be ascertained by reference to the

---

[45]Doc. 19 at 20-23.

[46]29 U.S.C. § 1382, 1399(b)(1).

[47]Doc. 19 at 22-23.

[48]*Id.*

[49]*See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983).

[50]*United Paperworkers v. Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (quoting *id.*).

-8-

laws and legal precedents and not from general considerations of supposed public interest."[51]

As FJCC and IBEW concede, the Ninth Circuit has not yet addressed the public policy concerns of whether a third party may contractually agree to be held liable for an employer's withdrawal liability obligations under the MPAA.[52] Moreover, the only two Courts of Appeal that have addressed similar indemnity claims for withdrawal liability have held that employers may enforce against unions valid indemnification provisions in CBAs.[53] Those courts found no violation of public policy because the employer remained liable to the fund and merely sought reimbursement from the union, and thus the pension funds remained adequately funded.[54]

The unions argue that *Shelter Distribution* and *Pittsburgh Mack* are distinguishable here because, unlike the employers in those cases, "far from accepting responsibility for their withdrawal liability, CB&I has instead pressed the court to have the FJCC and IBEW accept their payments."[55] CB&I's complaint, however, requests that the unions "reimburse" CB&I rather than become directly liable to the Alaska Electrical Pension Fund.[56] FJCC and IBEW therefore fail to establish a well-defined and dominant public interest that the scope of CB&I's requested relief would violate. And to the extent FJCC and IBEW dispute CB&I's characterization of the requested relief, such

---

[51]*W.R. Grace*, 461 U.S. at 766 (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)).

[52]Doc. 19 at 21.

[53]*See Shelter Distrib., Inc. v. General Drivers, Warehousemen & Helpers Local Union No. 89*, 674 F.3d 608, 612 (6th Cir. 2012); *Pittsburgh Mack Sales & Serv. v. Int'l Union of Oper. Eng'rs, Local No. 66*, 580 F.3d 185, 195 (3d Cir. 2009).

[54]*Shelter Distrib.*, 674 F.3d at 612-13; *Pittsburgh Mack*, 580 F.3d at 192-95.

[55]Doc. 19 at 22.

[56]Doc. 1 at 7-8 ¶¶ 30-31.

contention presents a factual determination that this court cannot make at this early pleading stage.

## V.  CONCLUSION

For the reasons above, the motion to dismiss at docket 19 is **DENIED**.

DATED: October 3, 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT2