# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| CHICAGO BRIDGE AND IRON COMPANY, N.V., | |
| Plaintiff, | 3:18-CV-00100 JWS |
| vs. | ORDER AND OPINION |
| | [Re: Motion at docket 26] |
| FAIRBANKS JOINT CRAFTS COUNCIL, AFL-CIO; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL # 1547, | |
| Defendants. | |

## I. MOTION PRESENTED

At docket 26, Plaintiff Chicago Bridge and Iron Company, N.V. (CB&I) filed a motion to compel, requesting that the court order Defendant International Brotherhood of Electrical Workers, Local #1547 (IBEW) to produce documents withheld from CB&I based upon IBEW's assertion of a "labor relations privilege." IBEW filed its opposition

at docket 29. CB&I's reply is at docket 30. Oral argument was not requested and would not be of assistance to the court.

## II. BACKGROUND

CB&I's complaint alleges breach of contract and seeks declaratory relief pertaining to enforcement of provisions contained within the collective bargaining agreements (CBAs) between the parties. Specifically, the case involves the interpretation of the terms of two CBAs: (1) a 2012-2014 CBA between Defendant Fairbanks Joint Crafts Council, AFL-CIO (FJCC) and a company that CB&I acquired in 2013 and (2) a 2014-2016 CBA between CB&I and FJCC and "its affiliates," which includes IBEW and other trade unions. Both CBAs address "bargaining unit work of employees of certain employers at U.S. Army Alaska bases under the terms of a DPW Support Services Contract."[1] Each CBA has a provision related to pension plans for employees that requires CB&I to contribute to a retirement benefit fund (the Fund) according to "Schedule A" of the CBAs.[2]

CB&I alleges that it incurred withdrawal liability under the Fund when CB&I ceased performing the DPW Support Services Contract after the Government re-bid the project and CB&I was disqualified from submitting a bid to retain the support services contract because it is not a small business contractor. CB&I alleges that the CBAs require FJCC and IBEW to reimburse CB&I for liability amounts assessed by the Fund because of its early withdrawal. CB&I alleges that "[t]he withdrawal liability incurred by

---

[1]Doc. 1 at ¶ 3.

[2]Doc. 1 at ¶ 9.

-2-

it, and paid to the Fund to date, is in excess of the amounts set forth in Schedule A of each CBA" and therefore "[the] contractual warranty under Section 15.04 of each CBA obligates each union to reimburse CB&I for liability for providing retirement benefits in excess of the contribution percentages set forth in Schedule A of the CBA."[3]

In November of 2018, IBEW provided its initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure. Its disclosures included about 20 documents that were redacted or withheld in full based upon what IBEW refers to as a "labor relations privilege" that protects union notes and correspondence from its bargaining files that reflect on its strategy, mental impressions, opinions, analysis, or conclusions. CB&I now moves to compel the production of the redacted and withheld documents, arguing that such a privilege is not recognized in federal court.

### III. DISCUSSION

Resolution of this case involves determining the parties' obligations related to pension plan contributions under the terms of the applicable CBAs. CB&I contends that discovery related to the negotiation of the CBAs in question is relevant to demonstrate "the intent of the parties concerning Section 15.04 or pension contribution obligations generally" and should be disclosed.[4] In its response, IBEW did not challenge the relevancy of the redacted or withheld material. Nor did it assert that it is withholding union communications and notes related to contract negotiations based on Rule 26(c) or attorney-client privilege. The only basis for withholding the material is what the IBEW

---

[3]Doc. 1 at ¶ 19.

[4]Doc. 26 at p. 5.

labels a "labor relations privilege" and therefore the only question for the court at this time is whether such a privilege exists to protect IBEW's internal communications and notes from discovery.

In federal question cases such as this, federal common law determines whether there is a privilege.[5] Federal courts have "the flexibility to develop rules of privilege on a case-by-case basis."[6] However, the Supreme Court has stated that it is "disinclined to exercise this authority expansively."[7] An evidentiary privilege should not be applied "unless 'it promotes sufficiently important interests to outweigh the need for probative evidence. . . . '"[8] Given federal "policy favoring open discovery" privileges must be "strictly construed."[9] The party seeking the application of a privilege has the burden to establish the existence of that privilege and its applicability to the particular case.[10]

IBEW cites to *Harvey's Wagon Wheel, Inc. v. NLRB*[11] in support of a labor bargaining strategy privilege. In that case, the Ninth Circuit considered whether an employer under investigation by the NLRB for unfair labor practices could obtain access to NLRB investigation documents through a Freedom of Information Act (FOIA) request

---

[5]*Kaufman v. Bd. of Trs.*, 168 F.R.D. 278, 280 (C.D. Cal. 1996); *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir. 1975).

[6]Fed. R. Evid. 501.

[7]*Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990).

[8]*Id.* (citing *Trammel v. United States*, 445 U.S. 40, 51 (1980)).

[9]*Dowling v. Am. Hawaii Cruises, Inc.*, 971 F.2d 423, 425 (9th Cir. 1992).

[10]*Curry v. Contra Costa City.*, No. C-12-03940, 2013 WL 4605454, at * 2 (N.D. Cal. Aug. 28, 2013).

[11]550 F.2d 1139 (9th Cir. 1976).

while the investigation was ongoing. The NLRB objected to disclosure based on an exclusion provision in FOIA, 5.U.S.C. § 552(b)(7)(A), which exempts investigatory records compiled for law enforcement purposes to the extent that disclosure would interfere with enforcement proceedings. The court upheld the lower court's ruling that employee statements made during the course of the NLRB investigation were protected from disclosure under the FOIA exemption but remanded the issue to the lower court to determine whether statements of union agents and representatives would also fall within the exemption.[12] When remanding, the court stated that "statements of union representatives and agents of the employee . . . should normally be protected from disclosure as a matter of law. Otherwise, the danger of their withholding relevant information for fear of exposing crucial material regarding pending union negotiations would be manifest." IBEW relies on this language in support of a labor relations privilege protecting bargaining materials.

The court concludes that IBEW's reliance on *Harvey's Wagon Wheel* is misplaced. The Ninth Circuit analyzed the question of disclosure based on NLRB rules and FOIA exemptions. The language relied on by IBEW is only dicta—there was no holding related to a categorical privilege that would protect all labor negotiations and strategies from disclosure in all circumstances—and must be read in light of the circumstances of that case. The case here does not involve FOIA disclosure exemptions or an ongoing NLRB employer investigation. Moreover, disclosure of

---

[12]*Id.* at 142-43.

documents related to contract terms of an expired CBA does not threaten to "expos[e] crucial material regarding pending union negotiations."[13]

IBEW also cites *Mallick v. International Brotherhood of Electrical Workers*[14] as another federal court case that recognizes a privilege for labor bargaining strategy. *Mallick* involved a claim brought by a union member against the union under the Labor-Management Reporting and Disclosure Act. The member sought access to union financial records related to litigation in which he was not a party. In determining whether the member was entitled to view such records the court weighed his interest in gaining access to the materials under the statute against the possible harm to the union.[15] In doing so, it indicated that if "disclosure of [the financial] information would be comparable to . . . a union's disclosure of organizing strategy, negotiating plans, or other secrets, then examination should be refused."[16]

Again, the case is inapposite. The *Mallick* court was not addressing pretrial discovery of materials related to prior negotiations of expired CBAs. Moreover, the court was not deciding whether the requested financial records were privileged but rather whether the member's showing of "just cause" for access under the applicable statute was outweighed by the union's financial interest in nondisclosure. "*Mallick*, at most, suggests that disclosure of the documents would be harmful to the union."[17] It

---

[13]*Id.* at 1143.

[14]749 F.2d 771 (D.C. Cir. 1984).

[15]*Id.* at 783-85.

[16]*Id.* at 785.

[17]*Patterson v. Heartland Indus. Partners, LLP*, 225 F.R.D. 204, 207 (N.D. Ohio 2004).

-6-

does not persuasively establish a federal privilege categorically protecting material related to a union's bargaining strategy.

IBEW also relies on NLRB cases and a NLRB general counsel advisory opinion for its assertion that labor relations privilege has been applied by courts to protect notes and communications by bargaining team members as to strategy. NLRB cases and advisory opinions, however, are not binding on this court.[18] While NLRB cases may be granted deference on matters of labor policy and collective bargaining,[19] IBEW fails to cite a case suggesting that such deference should extend to matters involving federal privileges.

Aside from the lack of precedential value, the NLRB cases are not clearly supportive of IBEW's position in this litigation. The NLRB case often cited for establishing a privilege for internal union communications and bargaining strategy is *Berbiglia, Inc.*[20] In that case the NLRB was addressing an unfair labor practice dispute. The administrative law judge revoked an employer's subpoena for communications between the union and its members and other organizations which might show the union's reasons for a strike. She found that the employer was on a "fishing expedition" and that requiring the union to disclose its communications would be "subversive of the very essence of collective bargaining and the quasi-fiduciary relationship between a

---

[18]*See Parra v. Basha's, Inc.*, No. Civ-02-591, 2001 WL 25781409, at *5, n.2 (D. Ariz. Oct. 2, 2003).

[19]*See, e.g., NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786 (1990).

[20]233 NLRB 1476 (1977)

union and its members."[21]  She went on to state that for collective bargaining to work, "the parties must be able to formulate their positions and devise their strategies without fear of exposure.  This necessity is so self-evident as apparently never to have been questioned."[22]  The court reasoned that the communications sought would "expos[e] crucial material regarding pending union negotiations."[23]  Her decision was upheld by the NLRB.

However, the case the *Berbiglia* opinion cited in reliance for its position that the necessity to protect internal union communications has never been questioned is *Harvey's Wagon Wheel*, which, as noted above, dealt with disclosure of investigatory files under FOIA.  Moreover, a more recent NLRB decision rejected the argument that *Berbiglia* created a blanket privilege for union negotiation and strategy materials, stating that it could find "no substantial authority for the notion that a bargaining party's strategy records enjoy some special, categorical insulation from discovery in an unfair labor practice prosecution where the party's strategy is a relevant subject . . ."[24]  The NLRB decisions that do invoke *Berbiglia* to protect internal union documents involve union grievances and disputes under an existing collective bargaining agreement, which is not the case presented here.

---

[21]*Id.* at 1495.

[22]*Id.*

[23]*Id.*

[24]*Taylor Lumber & Treating, Inc.*, 326 NLRB 1298, 1300 (1998).

Other federal district courts have denied the recognition of a labor relations privilege that would protect union materials related to bargaining strategy.[25] A Northern District of California court rejected the assertion of a union-employee communications privilege, stating that there is no published Ninth Circuit authority supporting such a privilege and citing an unpublished Ninth Circuit case that held it would not apply such a privilege.[26] In the unpublished case, the Ninth Circuit said there was no precedent providing the authority to apply a union-employee communications privilege and that it was not going to "continue the evolutionary development of testimonial privileges by recognizing a new privilege in this case."[27]

In light of the court's obligation to construe privileges narrowly and in the absence of binding precedent recognizing the existence of a labor relations privilege protecting union materials related to bargaining strategy, IBEW's basis for nondisclosure is rejected. IBEW asserts no other basis for nondisclosure, and therefore CB&I is entitled to the relevant redacted and withheld material.

---

[25]*Soc'y of Prof'l Eng'g Emps. in Aerospace, v. Boeing Co.*, Nos. 05-1251, 07-1043, 2009 WL 3711599, at * (D. Kan. Nov. 3, 2009); *Patterson*, 225 F.R.D. at 207 (N.D. Ohio 2004); *Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-cv-02007, 2012 WL 1801979, at * 5 (D. Colo. May 16, 2012).

[26]*Curry*, 2013 WL 4605454, at *3.

[27]*Kyei v. Or. Dep't of Transp.*, 497 Fed. Appx. 711, 713 (9th Cir. 2012).

## IV. CONCLUSION

Based on the preceding discussion, Plaintiff's motion at docket 26 is GRANTED. Defendant IBEW shall provide the withheld and redacted material within 14 days of this order.

DATED this 23rd day of June 2019.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT