# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

CHICAGO BRIDGE AND IRON
COMPANY, N.V.,

        Plaintiff,

    v.

FAIRBANKS JOINT CRAFTS
COUNCIL, AFL-CIO;
INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL #1547,

        Defendants.

Case No. 3:18-cv-00100-SLG

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 51 is Defendants International Brotherhood of Electrical Workers Local #1547 ("IBEW 1547) and Fairbanks Joint Crafts Council, AFL-CIO's ("FJCC") Motion for Summary Judgment. Plaintiff Chicago Bridge and Iron Company, N.V. ("Chicago Bridge") responded in opposition at Docket 54. Defendants IBEW 1547 and FJCC replied at Docket 56. Also before the Court, at Docket 52, is Chicago Bridge's Motion for Summary Judgment. Defendants IBEW 1547 and FJCC responded in opposition at Docket 55. Chicago Bridge replied at Docket 57. Defendants requested oral argument and the Court heard argument on the motions on January 13, 2020.[1]

---

[1] Due to the coronavirus pandemic, by Miscellaneous General Order 20-11, the District of Alaska imposed a stay on all civil matters for 30 days, effective March 30, 2020. As the

## BACKGROUND

Plaintiff Chicago Bridge[2] and Defendants IBEW 1547 and FJCC were co-signatories to a Collective Bargaining Agreement with a term from October 1, 2014 to September 30, 2016 ("2014 CBA").[3] Plaintiff is one of multiple employers that was a signatory to the agreement; Defendants are labor organizations representing employees.[4] The 2014 CBA governed work performed by the signatory employers at U.S. Army Alaska bases under the terms of a support services contract.[5] As a signatory to the 2014 CBA, Plaintiff was required to (and did) make contributions to the Alaska Electrical Pension Fund ("Fund"), a multi-employer pension plan.[6] Prior to the 2014 CBA, Defendants were signatories to a CBA with Shaw Environmental and Infrastructure, Inc. ("Shaw Environmental")

---

presiding judge in this matter, the undersigned vacates the stay in this case to allow entry of judgment, taxing of costs, and post-judgment motions. *See* MGO-20-11 at 6–7. However, the parties may move or stipulate to extend any filing deadlines.

[2] Chicago Bridge took an assignment of a claim from CBI Federal Services LLC, the party that was actually a signatory to the 2014 CBA. Docket 62 at 12: 17–22. *See also* Docket 1-2 (2014 CBA). However, as Plaintiff does not distinguish between the entities in its Complaint or in its Motion for Summary Judgment, the Court will refer to both entities as Plaintiff in this Order. *See, e.g.*, Docket 1 at 3, ¶¶ 6–7 (Complaint); *accord* Docket 1-2 at 3 (agreement between CB&I Federal Services LLC and unions).

[3] Docket 1 at 2, 3 ¶¶ 3, 7; Docket 13 at 2, ¶ 3 (IBEW 1547 Answer); Docket 14 at 2, ¶ 2 (FJCC Answer). *See also* Docket 1-2.

[4] Docket 1 at 2, ¶ 3; Docket 13 at 2, ¶ 3; Docket 14 at 2, ¶ 3. The FJCC is an affiliation of local labor unions, including IBEW 1547. Docket 51 at 8. FJCC negotiates CBAs for its affiliate unions on behalf of workers. Docket 51 at 8.

[5] Docket 1-2 at 3; Docket 13 at 2, ¶ 3.

[6] Docket 1 at 3–4, ¶¶ 5–11; Docket 13 at 2–3, ¶¶ 5–11; Docket 1-2 at 15.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 2 of 30

with a term from October 1, 2012, to September 30, 2014 ("2012 CBA").[7] Like the

2014 CBA, the 2012 CBA also required contributions to the Fund.[8] During the term

of the 2012 CBA, Plaintiff acquired the Shaw Group, Inc., of which Shaw

Environmental was a subsidiary, and assumed Shaw Environmental's obligations

under the CBA, including its pension contributions.[9]

The mandatory employer contributions to the Fund are governed by Article

15.04 of the 2014 CBA, which provides that:

> With respect to employees covered by the Agreement, the Employer
> will contribute to the applicable Trust Fund according to Schedule "A,"
> which is attached to this Agreement, for the purpose of providing
> retirements benefits for employees. . . .
>
> The Union warrants and represents that the Employer's liability, with
> respect to providing retirement benefits, shall be no greater than as
> provided above, that the respective Trust Funds are jointly established
> Trust Funds administered, operated, and maintained in accordance
> with the law, and further that the Trust Funds have been and continue
> to be qualified by the Internal Revenue Service.[10]

The 2012 CBA contains identical language, as did two earlier CBAs between FJCC

and Shaw dating back to 2004 and 2009, respectively.[11]

---

[7] Docket 1 at 3, ¶ 6; Docket 13 at 2, ¶ 6; Docket 14 at 2–3, ¶ 6; Docket 1-1 (2012 CBA).

[8] Docket 1-1 at 15.

[9] Docket 1-1 at 3; Docket 1 at 3, ¶ 6; Docket 51 at 9 n.4, 9–10.

[10] Docket 1-2 at 15.

[11] Docket 51 at 9–10; *see also, e.g*, Docket 1-1 at 15.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 3 of 30

In 2015, when the U.S. Government re-bid certain projects at military bases in Alaska, Plaintiff lost its projects to another bid.[12] As such, Plaintiff stopped making contributions to the Fund.[13] In a letter dated September 15, 2016, the Fund requested $678,171 of withdrawal liability from Plaintiff, which Chicago Bridge paid.[14] In turn, Plaintiff requested reimbursement from Defendants, relying on Article 15.04 of the CBA to assert that "the Union unequivocally warranted and represented that [Plaintiff's] cost of providing pension benefits to . . . employees would be limited to those amounts expressly provided for in Schedule A of the CBA."[15] Defendants declined to reimburse Plaintiff.[16]

Plaintiff commenced this action against Defendants on April 20, 2018, alleging breach of contract and seeking a declaratory judgment "that Section 15.04

---

[12] Docket 1 at 4, ¶ 12.

[13] Docket 1-4 at 1.

[14] Docket 1 at 4–5, ¶¶ 12–15; Docket 1-3. Pursuant to 29 U.S.C. § 1381, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be withdrawal liability." The withdrawal liability amount was based on contributions dating back to 2010. Docket 1-3 at 3. The pre-2014 contributions are covered by the earlier CBAs, which contained the identical language governing mandatory employer contributions to retirement benefits. *See* Docket 51 at 9; Docket 1-1 at 15.

[15] Docket 1-5 at 2. *See also* Docket 1-4 (letter from CB&I to union seeking reimbursement of withdrawal liability)

[16] Docket 1 at 6, ¶ 21; Docket 13 at 6, ¶ 21; Docket 14 at 4, ¶ 21; Docket 1-6 (August 29, 2017 letter from unions declining to reimburse Chicago Bridge). Plaintiff reached a settlement with the Fund during arbitration proceedings in the amount of $550,000, the amount it now seeks to recover from Defendants. Docket 52 at 7; Docket 52-4 at 2 (settlement agreement between Fund and Chicago Bridge).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 4 of 30

of the CBA requires the Union to reimburse CB&I for any and all future withdrawal liability payments by CB&I to the Fund."[17]  On August 6, 2018, Defendants moved for judgment on the pleadings, contending that Plaintiff "failed to use the required grievance and arbitration machinery" provided for in the CBA and that Plaintiff's claim for damages was "futile because a union cannot contractually assume withdrawal liability for an employer."[18]  On October 3, 2018, the Court denied Defendants' motion, holding that the mandatory arbitration provision "unambiguously applies to employee grievances only," and finding that Defendants failed to establish a "well-defined and dominant public interest that the scope of [Plaintiff's] relief would violate," as Plaintiff was not seeking that Defendants be directly liable to the Fund.[19]  On October 30, 2019, Defendants filed a joint motion for summary judgment and requested oral argument.[20]  On October 31, 2019, Plaintiff filed a cross-motion for summary judgment.[21]  The Court heard oral argument on both motions on January 13, 2020.[22]

---

[17] Docket 1 at 1, 8.

[18] Docket 19 at 6, 20.

[19] Docket 25 at 7, 9.

[20] Docket 51.

[21] Docket 52.

[22] Docket 62.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 5 of 30

On January 23, 2020, Plaintiff filed a Notice of Bankruptcy for McDermott International, Inc. and Certain of Its Affiliates, and Notice of Automatic Stay of Proceedings.[23] The notice indicates that McDermott International, Inc. and certain of its affiliates (together "Debtors") filed petitions for relief under Chapter 11 of Title 11 of the U.S. Bankruptcy Code.[24] Plaintiff is among those affiliates.[25] Plaintiff's notice states that:

> [P]ursuant to section 362(a) of the Bankruptcy Code, the Debtors' filing of their respective voluntary petitions gives rise to a stay, applicable to all entities, of, among other things: (a) the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors (i) that was or could have been commenced before the commencement of the Chapter 11 Cases or (ii) to recover a claim against the Debtors that arose before the commencement of the Chapter 11 Cases; (b) the enforcement against any of the Debtors or against any property of each of the Debtors' bankruptcy estates of a judgment obtained prior to the commencement of the Chapter 11 Cases; and (c) any act to obtain possession of property of or from any of the Debtors' bankruptcy estates, or to exercise control over property of any of the Debtors' bankruptcy estates.[26]

On February 3, 2020, Defendants responded to Plaintiff's Notice of Bankruptcy and Automatic Stay of Proceedings, stating that they "do not believe that the automatic stay has any application to this case, because it is an action

---

[23] Docket 60.

[24] Docket 60 at 1.

[25] Docket 60-1 at 7.

[26] Docket 60 at 2–3.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 6 of 30

Plaintiff initiated."[27]  Defendants indicated that the parties conferred over the effect of the notice, but that "Plaintiff's counsel is conferring with his client and is not yet in a position to inform the Court if Plaintiff has a different position."[28]  There have been no subsequent filings by either party on this issue.  Regardless, the Court agrees with Defendants that the automatic stay provision of 11 U.S.C. § 362(a) does not apply to judicial proceedings that are initiated by the debtor.[29]  It applies to actions "against the debtor" and is inapplicable to suits such as this one, commenced by Plaintiff.[30]  Accordingly, the Court addresses the parties' motions for summary judgment.

---

[27] Docket 61 at 2.

[28] Docket 61 at 3.

[29] *See, e.g., Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc.*, 654 F.3d 868, 875 (9th Cir. 2011) ("The [automatic] stay does not prevent a plaintiff/debtor from continuing to prosecute its own claims nor does it prevent a defendant from protecting its interests against claims brought by the debtor.  This is true even if the defendant's successful defense will result in the loss of an allegedly valuable claim asserted by the debtor."); *Mitchell v. Fukuoka Daiei Hawks Baseball Club*, 206 B.R. 204, 212 (Bankr. C.D. Cal. 1997) ("The 11 U.S.C. § 362 automatic stay only stays lawsuits *against* the debtor and the debtor's bankruptcy estate.  The Section 362 stay does not apply where, as here, the debtor is the plaintiff in a lawsuit." (emphasis in original)).

[30] *See Gordon v. Whitmore*, 175 B.R. 333, 336 (B.A.P. 9th Cir. 1994) ("[T]he operative subsections in the case at hand . . . contemplate actions '*against*' the debtor . . . ." (emphasis in original)).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 7 of 30

## LEGAL STANDARD

### I.     Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.[31]  When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[32]

### II.    Interpretation of Collective Bargaining Agreements

Courts apply federal common law principles of contract interpretation when construing a CBA.[33]  As the Ninth Circuit recently explained, "the Supreme Court has long interpreted the [Labor Management Relations Act] as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts."[34]  It continued: "any suit 'alleging a violation of a

---

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[32] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (alteration in original) (quoting *Anderson*, 477 U.S. at 255).

[33] *Alday v. Raytheon Co.*, 693 F.3d 772, 782 (9th Cir. 2012).

[34] *Curtis v. Irwin Indus.*, 913 F.3d 1146, 1151 (9th Cir. 2019) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 8 of 30

provision of a labor contract must be brought under § 301 [of the LMRA, 29 U.S.C. § 185,] and be resolved by reference to federal law.'"[35]  Indeed, "this federal common law preempts the use of state contract law in CBA interpretation and enforcement."[36]  But "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy."[37]

Thus, courts "interpret collective bargaining agreements . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy,"[38] and CBAs should be read "in the context of an entire agreement's language, structure, and stated purpose."[39]  "'In this endeavor, as with any other contract, the parties' intentions control.' 'Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.'"[40]

_____

04 (1962)).

[35] *Id.* at 1151–52 (quoting *Lueck*, 471 U.S. at 210).  As the Supreme Court has explained, "the meaning given to terms in collective-bargaining agreements must be determined by federal law [because] . . . '[t]he possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.'"  *Lueck*, 471 U.S. at 210 (quoting *Lucas Flour Co.*, 369 U.S. at 103).

[36] *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1031 (9th Cir. 2016) (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001)).

[37] *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457 (1957).

[38] *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015).

[39] *Am. Fed'n of Musicians v. Paramount Pictures Corp.*, 903 F.3d 968, 977 (9th Cir. 2018) (quoting *Alday v. Raytheon Co.*, 693 F.3d 772, 782 (9th Cir. 2012)).

[40] *Tackett*, 135 S. Ct. at 933 (first quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 9 of 30

### III.    Withdrawal Liability

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381, created withdrawal liability to prevent employers from withdrawing from a multiemployer pension plan without paying their share of unfunded, vested benefits, and thereby threatening the plan's solvency.[41]    The plan determines whether an employer has withdrawn from the fund and assesses the employer's share of any "unfunded vested benefits" as withdrawal liability.[42]

### DISCUSSION

The parties' dispute arises from conflicting interpretations of Article 15.04 of the 2014 CBA; the parties do agree, however, that the case is resolvable on summary judgment.[43]    Indeed, in their cross-motions for summary judgment, each party maintains that Article 15.04 is unambiguous and that its plain meaning

---

559 U.S. 662, 682 (2010) then quoting 11 Richard A. Lord, A Treatise on Contracts § 30:6 (4th ed. 2012)).

[41] *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust.*, 508 U.S. 602, 608 (1993) (explaining that MPPAA was enacted in part to "alleviate the problem of employer withdrawals" by instituting "rules under which a withdrawing employer would be required to pay whatever share of the plan's unfunded liabilities was attributable to that employer's participation" (quoting *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 216 (1986))).

[42] 29 U.S.C. §§ 1382, 1399(b)(1). *See also Connolly*, 475 U.S. at 217 ("This withdrawal liability is the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of the vested benefits and the current value of the plan's assets." (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984))).

[43] Docket 62 at 22:7–23 and at 26:24–27:6.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 10 of 30

governs. Defendants contend that the plain language of the article and the extrinsic evidence confirm that Article 15.04 is a warrants-and-represents clause, and nothing more, and that, in any event, the provision applies only to retirement benefits and not to withdrawal liability.[44]  Plaintiff, in contrast, contends that by its plain language, Article 15.04 guarantees that Defendants will indemnify Plaintiff if it has to pay more than the scheduled amount in retirement benefits—including any withdrawal liability—and that there is no extrinsic evidence that alters this plain meaning.[45]

## I.    Language of Article 15.04

The Court first considers the plain language of the disputed term of Article 15.04, in the context of the agreement as a whole.[46]  Article 15.04 provides that:

> The Union warrants and represents that the Employer's liability, with respect to providing retirement benefits, shall be no greater than as provided above, that the respective Trust Funds are jointly established Trust Funds administered, operated, and maintained in accordance with the law, and further that the Trust Funds have been and continue to be qualified by the Internal Revenue Service.[47]

The parties disagree as to whether the language "[t]he Union warrants and represents that the Employer's liability . . . shall be no greater than as provided

---

[44]  Docket 51 at 20–37.

[45] Docket 52 at 14–23.

[46] *Alday v. Raytheon Co*., 693 F.3d 772, 782 (9th Cir. 2012).

[47] Docket 1-2 at 15.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 11 of 30

above" is a promise to indemnify the employer for any additional incurred liability. They also dispute whether "retirement benefits" encompasses withdrawal liability. The Court considers each phrase in turn.

### a. The "warrants and represents" language

Defendants emphasize that the term "indemnify" does not appear in Article 15.04, whereas it does elsewhere in the CBA.[48] Accordingly, Defendants conclude that "where the parties wanted to draft express indemnification provisions . . . , they knew how to do so," and that Plaintiff's proposed construction requires the Court to read an implied right of indemnification into Article 15.04 even where express indemnification rights exist elsewhere in the CBA.[49] Defendants contend that the "Court should presume the parties' omission of any indemnification language in Article 15 is intentional" under basic canons of construction.[50]

Defendants further contend that the "warrants-and-represents" language in the article is express and intentional. They maintain that the term "warrants" is "generally understood to be 'an assurance by one party to a contract of the

---

[48] Docket 51 at 22–23. Specifically, Defendants highlight Article 3 of the 2014 CBA, which provides that Defendants agreed "to indemnify the Employer for any costs, including legal fees, or liability incurred as a result of the Union's implementation and enforcement of" union membership obligations, and Article 4, which states that "the Union agrees to indemnify and hold harmless the Employer from any and all claims, actions and/or proceedings arising out of" union dues deductions. *See* Docket 51 at 23 (quoting Docket 1-2 at 5).

[49] Docket 51 at 22–23.

[50] Docket 51 at 23–24 (collecting cases).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 12 of 30

existence of a fact upon which the other party may rely,'"[51] and that the "representation" language is a "presentation of fact—either by words or by conduct—made to induce someone to act, esp[ecially] to enter into a contract."[52] Defendants contend that, in the context of Article 15.04, the "warrants-and-represents" provision is best understood as an "assurance and representation of an existing fact" for each of the three separate clauses contained within it.[53] Defendants contend that the first clause—the one at issue in this case—should be read "as an assurance that there are no side deals with individual signatory local unions that would force the employer to make additional pension contributions to generate additional benefits."[54] Citing three non-precedential opinions, Defendants contend that this more "limited construction . . . is particularly persuasive" where a CBA contains other provisions with express indemnification language.[55]

---

[51] Docket 51 at 24 (quoting *Metro. Coal. Co. v. Howard*, 155 F.2d 780, 784 (2d. Cir. 1946)).

[52] Docket 51 at 24 (quoting *Representation*, Black's Law Dictionary (11th ed. 2019)).

[53] Docket 51 at 25. Defendants contend that the "second and third clauses of the provision assure the signatories that the pertinent pension plans 'are jointly established Trust Funds administered, operated, and maintained in accordance with the law' and that the plans are 'qualified by the Internal Revenue Service.'" Docket 51 at 25. *See also* Docket 55 at 22 (identifying three clauses within "warrants-and-represents" provision).

[54] Docket 51 at 25–26; Docket 56 at 10–11.

[55] Docket 51 at 26 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986); *In re TOUSA, Inc.*, 408 B.R. 913, 919 n.6 (Bankr. S.D. Fla. 2009); *In re Air Crash Near Peggy's Cove*, MDL No. 1269, 99-5998, 2004 WL 2486263, at *8 (E.D. Pa. Nov. 2, 2004)).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 13 of 30

Plaintiff, on the other hand, maintains that Article 15.04 "should be interpreted to obligate the unions to reimburse Plaintiff for withdrawal liability."[56] Plaintiff contends that the "warrants and represents" provision is not acting as mere introductory language, as it does in some contracts, but "has teeth."[57] Plaintiff notes that "hold-harmless" and "indemnity" clauses are often referred to interchangeably,[58] and quotes Judge Learned Hand for the proposition that:

> A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past.[59]

Plaintiff emphasizes that the provision uses the word "shall," which it interprets as a "word of command [that] denotes mandatory action."[60] Thus, Plaintiff concludes that the language in Article 15.04 providing that its liability with respect to retirement benefits "shall be no greater than" the amount set forth in Schedule A is a "definite future promise by the Union that if [Plaintiff's] payments

---

[56] Docket 52 at 14.

[57] Docket 52 at 14–15.

[58] Docket 52 at 15 (citing *Indemnity Clause*, Black's Law Dictionary (11th ed. 2019)).

[59] Docket 54 at 8 (quoting *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946)). *See also* Docket 54 at 8 (collecting cases including *Glacier Gen. Assur. Co. v. Casualty Indem. Exch.*, 435 F. Supp. 855 (D. Mont. 1977) and *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888 (N.D. Cal. 2018)).

[60] Docket 52 at 15–16.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 14 of 30

for retirement benefits exceed the amounts set forth in the Schedules, it will reimburse the employer for those amounts."[61] Plaintiff contends that Defendants present "no evidence whatsoever" in support of their construction of the term as an "assurance that there are no side deals,"[62] and adds that if Article 15.04 is not read as a promise to indemnify, the provision is rendered meaningless.[63] Thus, while Plaintiff acknowledges that "the parties used the word 'indemnify' in other portions of the agreement," it maintains that the "omission of the magic word should not override the other canon of construction that the Court should not apply a construction to a term that would effectively render the provision meaningless."[64]

Plaintiff seeks to distinguish Defendants' trio of cases to the contrary, first, based on the language of the warranty provisions at issue in those cases—which it contends were not, as here, "clear warranty promis[es]"—and second, based on the facts.[65] Plaintiff maintains that "[t]he use of indemnify and hold-harmless

---

[61] Docket 52 at 16. *See also* Docket 54 at 10.

[62] Docket 54 at 9 (quoting Docket 51 at 25–26).

[63] Docket 52 at 17.

[64] Docket 54 at 10.

[65] Specifically, Plaintiff contends that in *Fontenot v. Mesa Petroleum Co.*, the "case involved competing provisions between the same parties each seeking indemnity from the other for the same loss" and the warranty provision was a representation of workmanlike performance rather than an "affirmative promise." Docket 54 at 11–12 (citing 791 F.2d 1207, 1219 (5th Cir. 1986)). Plaintiff seeks to distinguish *In re TOUSA, Inc.* because there, the parties sought indemnification based on a debtor's representation in an agreement that it would remain solvent, even though there was an express (and seemingly applicable) indemnity provision. Docket 54 at 12 (citing 408 B.R. 913, 916–17, 919 n.6 (S.D. Fla. 2009)). Lastly, Plaintiff contends that in *In re Air Crash Disaster*

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 15 of 30

language elsewhere in the CBA between the parties in the present case concerned different subject matters," and thus that the "failure of the parties to the CBA there to include the magic words 'indemnity' or 'hold harmless' in Article 15.04 should not be fatal to the claim that indemnity was intended."[66]  Plaintiff contends that "the Union does not argue or provide any support for the proposition that the application of Article 15.04 to create an indemnity obligation for withdrawal liability is otherwise covered by *another* contractual provision regarding '**the same subject matter.**'"[67]  Finally, it adds that under Alaska law, the doctrine of *expression unius est exclusion alterius* has "limited application."[68]

The Court "interpret[s] written terms in the context of the entire agreement's language, structure, and stated purpose."[69]  As the Ninth Circuit has explained:

> Under federal law, [a] written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations.  Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.

---

*Near Peggy's Cove*, the plaintiff sought indemnification based on a warranty of fitness and workmanlike performance, but the agreement had an express provision that the remedy for breach of warranty was repair/replacement, and not money damages.  Docket 54 at 12–13 (citing MDL No. 1269, 99-5998, 2004 WL 2486263, at *7–8 (E.D. Pa. Nov. 2, 2004)).

[66] Docket 57 at 13.

[67] Docket 57 at 10–11 (emphasis in original).

[68] Docket 57 at 11 (quoting *Chevron USA, Inc. v. LeResche*, 663 P.2d 923, 930–31 (Alaska 1983)).

[69] *Trs. of the S. Cal. IBEW-NECA Pension Trust Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 16 of 30

> Whenever possible, the plain language of the contract should be considered first.[70]

Here, the plain language of Article 15.04, in light of the structure of that article, and of the CBA as a whole, compels the Court to find that the disputed warrants-and-represents language is best understood as a warranty—providing assurance and representation of an existing fact—and not as an indemnification provision.

First, the provision uses the language "warrants and represents" and not "indemnifies." However, as Defendants point out, the parties expressly provided for indemnification elsewhere in the 2014 CBA. The parties specified that the Union would indemnify the Employer for costs (including legal fees) or liability incurred as a result of Article 3.01 or for any "claims, actions, and/or proceedings" arising from Article 4.01.[71] Thus, the parties clearly delineated the limited circumstances under which the Union agreed to indemnify the Employer. Although Plaintiff cites *Metropolitan Coalition Co. v. Howard* for Judge Learned Hand's statement that a warranty "amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue," there is no indication that the parties in that case had elsewhere provided expressly for indemnification.[72] Where, as here, the CBA contains express indemnification language, the Court finds that the

---

[70] *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003) (alteration in original) (internal quotations omitted).

[71] Docket 1-2 at 5.

[72] Docket 54 at 8 (155 F.2d 780 (2d Cir. 1946)).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 17 of 30

parties could not have intended the "warrants and represents" language to create an implied promise of indemnification.

While the Court agrees with Plaintiff that the trio of cases cited by Defendants—*Fontenot*, *In re Air Crash Disaster Near Peggy's Cove*, and *In re TOUSA, Inc.*—are distinguishable factually, they are nonetheless informative. In particular, the Court finds the reasoning in *In re Air Crash Disaster Near Peggy's Cove* persuasive.[73] In that case, Interactive Flight Technologies ("IFT") sought indemnification from Hollingshead International ("HI") based on an alleged breach of an express warranty term in the parties' agreement.[74] Specifically, the agreement contained a warranty provision that stated, "HI hereby represents and warrants to IFT that . . HI shall comply with all applicable federal, state and local laws in effect . . . [and] that all Services and Installation Labor shall be performed consistent with generally accepted professional standards."[75] Another subsection of the same provision stated that any product defects within the first 60 months after installation would be remedied by replacement or repair.[76] IFT sought indemnification from HI based on the warranty provision.[77] The District Court for

---

[73] MDL No. 1269, 99-5998, 2004 WL 2486263 (E.D. Pa. Nov. 2, 2004).

[74] *Id.* at *2.

[75] *Id.* at *8.

[76] *Id.* at *7.

[77] *Id.*

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 18 of 30

the Eastern District of Pennsylvania concluded that the parties had agreed to the scope of remedial action—repair or replacement of a defective product and "nothing more"—and added that "the only express indemnification specified in the Agreement is found in [another provision], which pertains to infringement of intellectual property rights."[78]  The district court found that "there is no basis for IFT's contention that it is entitled to express contractual indemnification from [HI] premised upon [HI's] alleged violation of a warranty provision."[79]  Although the parties here did not expressly provide for the scope of remedial action in the event of a breach of the warranty provision, they did provide for express indemnification in two other places in the CBA.  Accordingly, the Court concludes that Plaintiff has no basis to seek contractual indemnification premised on Defendants' alleged breach of the warranty provision.

Moreover, this plain reading of the warrants-and-represents clause is underscored by the remainder of Article 15.04, which provides that the Union "warrants and represents . . . that the respective Trust Funds are jointly established Trust Funds administered, operated, and maintained in accordance with the law" and "warrants and represents . . . that the Trust Funds have been and continue to be qualified by the Internal Revenue Service."[80]  As applied to those additional

---

[78] *Id.* at 8.

[79] *Id.*

[80] Docket 1-2 at 15.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 19 of 30

clauses, the "warrants and represents" language is naturally understood as an assurance and representation of those facts, and indeed, Plaintiff does not contend that these clauses amount to a promise of indemnification. Plaintiff's proposed construction would require the term "warrants and represents" to have two meanings within the same phrase—as a promise to indemnify with respect to the clause relating to liability for retirement benefits, and as a standalone warranty of fact as it pertains to the establishment and maintenance of the Trust Funds and to their qualification for the IRS.

Lastly, the Court is not persuaded by Plaintiff's assertion that the provision is meaningless unless the Court adopts Plaintiff's proposed meaning.[81] As Defendants correctly note, the provision serves to assure Plaintiff that its contributions to the retirement benefits of the employees are as outlined in Schedule A, and supersedes anything requiring additional contributions.[82]

---

[81] Docket 54 at 10.

[82] Defendants contend that the provision serves many purposes: to assure the employer there are no side deals and guarantee that if there are, the CBA supersedes them; to preclude former employees from seeking retirement benefits direction from the employer in the event the pension fund becomes insolvent; and potentially to entitle the employer to remedies if the warranty is breached. Docket 56 at 11. Defendants add that even Plaintiff's interpretation of the clause supports Defendants, insofar as Plaintiff contends that the clause is meant as a promise that liability for pension benefits will not exceed the amount in Schedule A, thereby necessarily overriding any side deals in other agreements. Docket 56 at 11–12.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 20 of 30

For the aforementioned reasons, the Court finds that the warrants-and-represents clause does not provide a basis for Plaintiff to obtain indemnification from Defendants for withdrawal liability.

### b. The "retirement benefits for employees" language

The parties also dispute whether withdrawal liability is, in fact, a "retirement benefit[] for employees" within the meaning of Article 15.04. Defendants contend that "providing retirement benefits" cannot be read to extend to withdrawal liability.[83] They emphasize that "no benefits accrue or vest to any employee on account of the payment of withdrawal liability."[84] Defendants cite to the District Court for the Middle District of Pennsylvania's opinion in *Nitterhouse Concrete Products, Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers International Union*, where the employer relied on contract language providing that "[t]he Company shall have no liability for the payment of benefits other than to make contributions to the Plan as above required" as a basis to seek indemnification from the Union for withdrawal liability.[85] Although the district court ultimately decided the case based on the expiration of the CBA, it expressly disagreed with the employer's reliance on that particular provision, finding that "paying withdrawal

---

[83] Docket 51 at 21.

[84] Docket 51 at 28.

[85] Docket 51 at 28 (citing Case No. 1:15-cv-2154, 2018 WL 656013, at *14 (M.D. Pa. Feb. 1, 2018)).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 21 of 30

liability is not the same thing as paying benefits," because "withdrawal liability is not payable to Plaintiffs' employees, as benefits would be, but to the Plan, tied to the Plan's unfunded estimated liabilities."[86] Defendants propose that the additional liability contemplated by the parties in Article 15.04 "might encompass, for example, additional promises (outside of the . . . CBAs) of pension contributions that would have led to the accrual or vesting of pension benefits for the employees," as opposed to withdrawal liability.[87]

Plaintiff, for its part, contends that it is undisputed that the withdrawal liability it paid "was in excess of its contributions" as contemplated by the CBA schedules.[88] It rationalizes that "[a]ny payments made by a withdrawing employer are meant to go towards *future* retirement benefits payable by the Plan."[89] Plaintiff acknowledges that withdrawal liability "may not go *directly* to the pockets of the employees with vested benefits" but insists that "it goes to replenishing fund assets for that purpose by defraying the shortfall."[90] It contends that "[i]n the sense that withdrawal liability amounts are intended to make up for the shortfall in plan assets in the future as to certain unfunded vested pension benefit liabilities, there is a

---

[86] *Id*.

[87] Docket 51 at 27.

[88] Docket 52 at 20, 27.

[89] Docket 52 at 20 (emphasis in original).

[90] Docket 54 at 15 (emphasis in original).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 22 of 30

correlation between the withdrawal liability and the 'retirement benefits' payable into the future."[91]  Plaintiff disputes Defendants' reliance on *Nitterhouse*, noting that the outcome of the case turned on the fact that expiration of the CBA barred the claim.[92]  Plaintiff instead relies on the Third Circuit's opinion in *Pittsburgh Mack Sales & Service, Inc. v. International Union of Operating Engineers*, where the employer sought indemnification from a union for claims for withdrawal liability brought by a multiemployer pension fund.[93]  However, the Court finds that *Pittsburgh Mack* does not further Plaintiff's position on the meaning of "retirement benefits."  Not only was the provision at issue in *Pittsburgh Mack* an express "hold harmless" provision, rather than a "warrants and represents" provision, but, more importantly, due to the procedural posture of the case, the Third Circuit indicated it had accepted as true "Pittsburgh Mack's contention that [a provision of the] CBA constitutes an agreement by the Union to indemnify or hold it harmless from

---

[91] Docket 54 at 15.

[92] Docket 54 at 16 ("Pronouncements by the district court as to whether indemnity for withdrawal liability under the 1970 CBA were mere dicta as they had no bearing on the court's holding.").  Plaintiff also asserts that the *Nitterhouse* plan was enacted prior to the MPPAA, Docket 54 at 16; however, as the *Nitterhouse* court noted, "the Union agreed, from 1982 through 2014, to the same indemnification language, after withdrawal liability became a distinct possibility in connection with the existence of the Plan," concluding "that the indemnity language should be construed consistent with the circumstances present at the time the CBAs were entered into, not just in 1976."  *Nitterhouse Concrete Prods., Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union,* Case No. 1:15-cv-2154, 2018 WL 656013, at *13 (M.D. Pa. Feb. 1, 2018)).

[93] Docket 52 at 20–21 (citing *Pittsburgh Mack*, 580 F.3d 185, 188 (3d Cir. 2009).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 23 of 30

withdrawal liability."[94]   Thus, the Third Circuit did not determine whether a hold harmless provision relating to benefits encompassed withdrawal liability.[95]

Having considered the plain language of the provision, the Court finds that the parties did not intend that "retirement benefits for employees"—within the context of Article 15.04 and the CBA—extend to withdrawal liability.  In light of the Court's finding, *supra*, that the warrants-and-represents language serves to assure and represent an existing fact, and not as a promise to indemnify, the term "retirement benefits" does not logically extend to cover withdrawal liability, which is a future event that may never occur.[96]   More critically, however, and as Plaintiff concedes, withdrawal liability does "not go *directly* to the pockets of the employees with vested benefits."[97]   Thus, withdrawal liability—which employees will not

---

[94] *Id.* at 192.  In its reply brief, Plaintiff acknowledges that the case was only cited for the "nature of withdrawal liability" and as "supporting the argument that indemnity for withdrawal liability in this context did not violate public policy."  Docket 57 at 13–14.

[95] *Id.* at 196, n.5 ("We note that there are other issues raised by the parties, such as how to construe Section 1 of the CBAs and whether it is explicit enough to show that the Union agreed to indemnify Pittsburgh Mack . . . .  While the District Court touched on these issues below, its ultimate conclusions were explicitly based on whether, in the context of a motion to dismiss, a violation of public policy made Section 1 of the CBAs unenforceable.  Accordingly we will not address these issues.").

[96] At oral argument, counsel for Plaintiff characterized the language "with respect to providing retirement benefits" as meaning "all benefits provided to bargaining unit employees for pension benefits, and . . . those that are funded immediately and withdrawal liability for unfunded, vested pension benefits that may arise."  Docket 62 at 23:21–25.

[97] Docket 54 at 7, 15 (emphasis in original).  Plaintiff contends instead that "there is a correlation between the withdrawal liability and the 'retirement benefits' payable into the future."  Docket 54 at 6–7, 15.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 24 of 30

actually receive as benefits—is not a retirement benefit according to the plain meaning of the term. This conclusion is consistent with the use of the term "retirement benefits" earlier in Article 15.04, which provides that "the Employer will contribute to the applicable Trust Fund according to Schedule 'A,' which is attached to this Agreement, for the purpose of providing *retirement benefits for employees*."[98] The reference to a benefit "for employees" supports a plain reading of the term "retirement benefits" as encompassing only those benefits that are paid directly to employees.

The Court cautions that there may well be contexts in which "retirement benefits" would encompass withdrawal liability, and that its holding here should not be understood to foreclose such an interpretation under all circumstances. However, in the context of Article 15.04 of the 2014 CBA, for the aforementioned reasons, the Court finds that the term "retirement benefits" does not include withdrawal liability.

## II. Extrinsic Evidence

Although both parties maintain that the CBA provision is unambiguous, each addresses extrinsic evidence as well. For their part, Defendants contend that the available extrinsic evidence shows that during negotiations, the parties did not understand the disputed provision to provide for indemnification.[99] Defendants

---

[98] Docket 1-2 at 15 (emphasis added).

[99] Docket 51 at 30–34. Defendants contend that, according to their deposition testimony,

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 25 of 30

contend the same was true for other employers to the CBA.[100]  Defendants further

maintain that extrinsic evidence shows that Plaintiff was on notice of Defendants'

interpretation of the clause during negotiations for the 2014 CBA, and yet did not

suggest a different interpretation before willingly entering the contract.[101]

Moreover, Defendants assert that Plaintiff's course of performance under

the CBA confirms that Plaintiff did not understand the clause to indemnify it;

specifically, Defendants emphasize that Plaintiff was "required to pay pension

surcharges and supplemental pension contributions in excess of the contributions

required under the CBAs" but never sought reimbursement or indemnification from

Defendants.[102]  Defendants contend that Plaintiff's additional payments were

---

Plaintiff's representatives in the CBA negotiation did not understand the language as an indemnification provision.  Docket 51 at 31; Docket 56 at 23 (asserting one negotiator testified he had never negotiated CBAs providing for reimbursement of withdrawal liability and the other "was not even *aware* of any withdrawal-liability indemnification language that could be included in a contract." (emphasis in original)).  Defendants further contend that FJCC's lead negotiator and CEO, Eileen Whitmer, also did not understand the provision as an indemnification provision.  Docket 51 at 31–32.

[100] Defendants maintain that other employers to the CBA attempted to "supplement the 2012 CBA with express indemnification language" which "indicates that they themselves believed that they were not entitled to indemnification for withdrawal liability in the absence of that additional language." Docket 51 at 32.  Defendants contend that "those parties' conduct supplies . . . evidence of industry usage."  Docket 56 at 15.

[101] Docket 51 at 39–40.  According to Defendants, Plaintiff's subcontractor, Inuit Services, Inc., which was also bound by the 2012 CBA, sought to supplement the agreement with a term that would have obligated one of the unions to "indemnify and hold harmless the Employer . . . for any contingent or withdrawal liability of any kind."  Docket 55 at 12–13.  According to Defendants, the FJCC's negotiator refused and forwarded the exchange memorializing her refusal to Plaintiff.  Docket 51 at 39–40.

[102] Docket 51 at 35.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 26 of 30

"effectively identical to the payment of withdrawal liability" in that they "were not required by the CBAs and did not result in the accrual of pension benefits to any individual."[103]   Finally, Defendants conclude that "Plaintiff can point to *no* fact supporting its interpretation."[104]

Plaintiff, on the other hand, contends that there is no relevant extrinsic evidence, representing that "the discovery taken in this case has established that there is no . . . evidence" of "intent of the parties to the CBAs" as to the language of Article 15.04.[105]  Specifically, Plaintiff contends that there was no discussion of the provision at issue during negotiations.[106]   It disputes Defendants' characterization of the negotiators' deposition testimony, maintaining that it shows only that one of Plaintiff's negotiators "did not remember the negotiation for the initial" CBA at all and the other did not remember any discussion of Article 15.04.[107] Plaintiff adds that the FJCC's lead negotiator for the 2014 CBA was not part of the negotiation of the 2004 CBA where the language first appeared and testified that

---

[103] Docket 51 at 37.  Defendant lists the following additional payments: monthly surcharges between Dec. 1, 2010, and Sept. 30, 2012, amounting to $17,809.09; monthly supplemental contributions between Oct. 12, 2012, and Apr. 30, 2015, amounting to $37,821.26; and supplemental contributions during the term of the 2014 CBA.  Docket 51 at 36.  They add that this failure to seek indemnification predates the 2014 CBA and thus the parties' course of dealing is impliedly incorporated therein.  Docket 51 at 37–38.

[104] Docket 51 at 38 (emphasis in original).

[105] Docket 52 at 22.

[106] Docket 52 at 22.

[107] Docket 54 at 17–18 (emphasis omitted); Docket 57 at 7–8.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 27 of 30

the disputed provision was not discussed during the negotiations that she did attend.[108]

In any event, Plaintiff maintains "there was no clear expression of intent on the part of [Defendants] . . . as to its interpretation of Article 15.04 so as to put [Plaintiff] on notice sufficient to bind it by silence."[109] Moreover, Plaintiff contends that Defendants' discussions and negotiations with other employers are irrelevant as neither Plaintiff nor its predecessor were a party to those negotiations.[110] It emphasizes that "[w]hat [other employers] may have believed, understood, or sought from the Union in bargaining has no bearing whatsoever on what [Plaintiff] believed or understood."[111] Plaintiff adds that its failure to seek indemnification for its supplemental contributions and surcharges "does not provide proof that it did not have that right," adding that those supplemental payments were governed by separate letter agreements and "do not provide course of conduct evidence as to

---

[108] Docket 54 at 18–19.

[109] Docket 54 at 25. On this basis, Plaintiff seeks to distinguish Defendant's cases, including *Perry & Wallis, Inc. v. United States*, 192 Ct. Cl. 310 (1970) and *Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784 (9th Cir. 2012). Docket 54 at 25–26; *see* Docket 51 at 40–41 (discussing cases). Specifically, Plaintiff notes that in both cases "there was direct back and forth between the parties as to expressions of intent regarding interpretation of a particular of an agreement, or direct and clear prior understanding of intent by the other party as to such provision." Docket 54 at 26.

[110] Docket 54 at 20–22. Plaintiff contends that its knowledge of these discussions was limited to an email from FJCC's President and lead negotiator, Eileen Whitmer, to Plaintiff's lead negotiator, forwarding her response to a different employer who was seeking an indemnity provision. Docket 54 at 21.

[111] Docket 54 at 21.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 28 of 30

the treatment of withdrawal liability under Article 15.04."[112]  Finally, Plaintiff urges

that because the available evidence suggests that "the FJCC initially proposed the

[Article] 15 language," that the Court should construe it against the drafters.[113]

"A contract term is ambiguous only if 'multiple reasonable interpretations

exist.'"[114]  "If a term is ambiguous, the court may look to extrinsic evidence to

determine the parties' intentions."[115]  The Ninth Circuit has explained that:

> When the operation of an ordinary contract is not clear from its language, a court generally may consider extrinsic evidence to determine the intent of the parties in including that language.  That principle is applied with even greater liberality in the case of a [CBA]. In ascertaining the intent of the parties to a [CBA], 'the trier of fact may look to the circumstances surrounding the contract's execution, including the preceding negotiations . . . . It may also consider the parties' conduct subsequent to a contract formation. . . and such conduct is to be given great weight.'[116]

The Court finds, as described above, that the meanings of the disputed

provisions in Article 15.04 are clear from the contract language and that the terms

---

[112] Docket 54 at 22–24.  *See also* Docket 57 at 16–17.

[113] Docket 52 at 23–24 (applying the "rule of *contra proferentem*" and citing *Barnes v. Indep. Auto. Dealers of Cal.*, 64 F.3d 1389, 1393 (9th Cir. 1995)).

[114] *Am. Fed'n of Musicians of the U.S. v. Paramount Pictures Corp.*, 903 F.3d 968, 977 (9th Cir. 2018) (quoting *Trs. Of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008)).

[115] *Id.*

[116] *Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1517–18 (9th Cir. 1985) (omissions in original) (emphasis omitted) (quoting *Laborers Health & Welfare Tr. Fund v. Kaufman & Broad*, 707 F.2d 412, 418 (9th Cir. 1983)).

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 29 of 30

are not ambiguous. However, it is also the case that the extrinsic evidence in the record is consistent with the plain and unambiguous meaning of Article 15.04. Plaintiff does not cite to any extrinsic evidence that is inconsistent with Defendants' proposed construction; indeed, it does not rely on any extrinsic evidence at all.[117] Thus, for the purposes of summary judgment, when considering the extrinsic evidence with all justifiable inferences made in Plaintiff's favor, the Court finds that Defendant is entitled to summary judgment.

For the aforementioned reasons, the Court concludes that Article 15.04 does not require Defendants to indemnify Plaintiff for withdrawal liability and grants summary judgment to Defendants.

## CONCLUSION

In light of the foregoing, IT IS ORDERED as follows: Defendants IBEW 1547 and FJCC's Motion for Summary Judgment at Docket 51 is GRANTED and Plaintiff Chicago Bridge's Motion for Summary Judgment at Docket 52 is DENIED.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 3rd day of April, 2020 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[117] Docket 52 at 22.

Case No. 3:18-cv-00100-SLG, *Chicago Bridge and Iron Company, N.V. v. Fairbanks Joint Crafts Council, AFL-CIO; International Brotherhood of Electrical Workers, Local #1547*
Order re Motions for Summary Judgment
Page 30 of 30